# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Wuilmer Omar Ferrera Bejarano,

     Petitioner,

     v.

Pamela Bondi, Attorney General,

Kristi Noem, Secretary, U.S. Department of Homeland Security,

Department of Homeland Security,

Todd M. Lyons, Acting Director of Immigration and Customs Enforcement,

Immigration and Customs Enforcement,

Sirce Owen, Acting Director for Executive Office for Immigration Review,

Executive Office for Immigration Review,

Peter Berg, Director, St. Paul Field Office Immigration and Customs Enforcement,

and,

Eric Tollefson, Sheriff of Kandiyohi County.

     Respondents.

Civil Case #25-3236

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

1

## INTRODUCTION

1.  An immigration judge ordered Petitioner, Mr. Wuilmer Omar Ferrera Bejarano ("Ferrera Bejarano"), released on bond, determining he was not a flight risk or danger to the community. Despite this order, the Department of Homeland Security ("DHS") invoked the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) to keep Petitioner in custody until the Court ordered Respondents to permit him to post bond pursuant to its Preliminary Injunction.

2.  "'In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'... Detention after a bail hearing rendered meaningless by an automatic stay likewise should not be the norm." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 675 (D.N.J. 2003) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)) (emphasis added).

3.  In a bond hearing for Ferrera Bejarano, DHS argued to the immigration judge that *all* noncitizens present in the United States without admission or parole are subject to mandatory detention. The immigration judge held otherwise and, finding Ferrera Bejarano is not a danger to the community nor a sufficient flight risk so that release should be denied, ordered DHS to release him on bond in the amount of $20,000.00. Since that time, the Board decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), affirming DHS's position

that all noncitizens present in the United States without admission or parole are subject to mandatory detention.

4.   DHS has now made a last-ditch effort to keep Ferrera Bejarano detained pursuant to its own *ultra vires* regulation, 8 C.F.R. § 1003.19(i)(2). By signing a boilerplate two-page Form EOIR-43, DHS unilaterally invoked an "automatic stay" of the immigration judge's order that he be released from Immigration and Customs Enforcement ("ICE") custody on bond. This automatic stay is not reviewable by an immigration judge. Because DHS has failed on immigration judge review, the only mechanism it can use to keep Ferrera Bejarano detained now conveniently and intentionally avoids Department of Justice ("DOJ") review.

5.   The automatic stay provision allows for indefinite detention via DHS's filing of discretionary stays and/or referrals to the Attorney General. Ferrera Bejarano could keep winning and continue to be detained despite further orders to the contrary.

6.   The risk of erroneous deprivation of liberty here is substantial. The application of the automatic stay provision to keep Ferrera Bejarano detained prior to this Court's PI was the result of a unilateral determination by Respondents to overrule and nullify the immigration judge's bond decision, impermissibly merging the functions of adjudicator and prosecutor.

3

7.   Importantly, unlike typical requests for stay of a judgment pending appeal, which require a demonstration of the likelihood of success on the merits, the automatic stay demands no such showing whatsoever. In fact, DHS enacted the automatic stay regulation precisely to avoid the need for such individualized determination. Noncitizens can consequently remain detained no matter how frivolous DHS's position on appeal.

8.   DHS's latest weaponization of 8 C.F.R. § 1003.19(i)(2), in an attempt to hold Ferrera Bejarano indefinitely in ICE custody is patently unlawful and unconstitutional.

9.   The automatic stay provision as applied to Ferrera Bejarano is *ultra vires*, and his detention pursuant to this regulation violates substantive and procedural due process protections of the Fifth Amendment.

10.  Ferrera Bejarano seeks declaratory and permanent injunctive relief in the form of immediate release from detention pursuant to the terms of release set forth by Immigration Judge Kalin Ivany in her August 7, 2025, custody determination decision.

11.  Pending the adjudication of his Petition, Ferrera Bejarano sought and received an order restraining Respondents from transferring him to a location where he cannot reasonably consult with counsel, such a location to be construed as any location outside of the geographic jurisdiction of the day-to-day operations of

4

ICE's St. Paul Office of Enforcement and Removal Operations in the State of Minnesota.

12. Pending the adjudication of this Petition, Ferrera Bejarano also respectfully requested and received assurances that Respondents be ordered to provide seventy-two (72) hour notice of any movement of Ferrera Bejarano.

## JURISDICTION AND VENUE

13. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), § 1361 (federal employee mandamus action), § 1651 (All Writs Act), and § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 ("Suspension Clause"); 5 U.S.C. § 702 (Administrative Procedure Act); and 28 U.S.C. § 2201 (Declaratory Judgment Act). This action further arises under the Constitution of the United States and the Immigration and Nationality Act ("INA").

14. Because Ferrera Bejarano seeks to challenge his custody as a violation of the Constitution and laws of the United States, jurisdiction is proper in this court.

15. Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas petitions by noncitizens challenging the lawfulness or constitutionality of their detention by DHS. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Nielsen v. Preap*, 586 U.S. 392 (2019); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1209–12 (11th Cir. 2016).

16. Federal district courts have jurisdiction to enforce 8 U.S.C. § 1226(a)(2). This statute, 8 U.S.C. § 1226(a)(2), entitles Petitioner to be released from custody pursuant to an order from an immigration judge granting bond under this section.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (e)(1)(B), and 2241(d) because Ferrera Bejarano was detained within this District. He was detained at the Kandiyohi County Jail in Willmar, Minnesota. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) because Respondents are operating in this district.

18. Ferrera Bejarano's petition is properly before this Court. First, this Court plainly has subject matter jurisdiction over the petition under 28 U.S.C. § 2241. On April 1, 2025, Judge Michael E. Farbiarz of the District of New Jersey stated plainly: "No one doubts that federal district courts have jurisdiction over the subject matter, habeas cases under 28 U.S.C. § 2241." *Khalil v. Joyce*, 777 F. Supp. 3d 369 (D.N.J. 2025).

19. This Court has jurisdiction to consider Ferrera Bejarano's constitutional challenge to the automatic stay provision of 8 C.F.R. § 1003.19(i)(2).

20. Ferrera Bejarano here does "not seek review of the Attorney General's exercise of discretion; rather, [he] challenge[s] the extent of the Attorney General's authority [under the stay provision]. And the extent of the authority

6

is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Because Ferrera Bejarano challenges whether the decision to continue his detention under 8 C.F.R. § 1003.19(i)(2) passes constitutional muster, this Court has jurisdiction over this claim.

21. A court in this district recently held that it had jurisdiction to review the habeas corpus petition of another noncitizen who was detained pursuant to the automatic stay. *See Mohammed H. v. Trump*, — F. Supp. 3d —, No. CV 25-1576 (JWB/DTS), 2025 WL 1334847 (D. Minn. May 5, 2025). Mohammed H "[did] not seek to end his removal proceeding or vacate the underlying executive determinations. Rather, he simply [sought] to end his allegedly unlawful confinement." *Id.* at 3; *see also Günaydın v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025). Ferrera Bejarano makes the same challenges here.

22. The Supreme Court has repeatedly affirmed the basic principle that district courts have habeas jurisdiction over claims of illegal civil immigration detention. *See Jennings*, 583 U.S. at 293 (finding jurisdiction over challenge to detention during removal proceedings); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (same).

23. 8 U.S.C. § 1252(g) does not preclude the Court's jurisdiction over Ferrera Bejarano's challenge to the legality of his detention.

24.   This narrow provision is tethered solely to decisions with respect to "three discrete actions" by the Attorney General to "'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (citing 8 U.S.C. § 1252(g)). By its terms, § 1252(g) does not apply to detention. *See, e.g.*, *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (finding (g) did not bar First Amendment challenge to ICE detention); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023) (holding that (g) does not preclude jurisdiction over challenges to the legality of the detention); *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) ("[T]he decision or action to detain an individual under § 1226(a) is independent from the decision or action to commence a removal proceeding.").

25.   Petitioner Ferrera Bejarano does not challenge ICE's general authority to detain him during removal proceedings  Petitioner's challenge is limited to Respondents' capacity to detain him without lawful basis or due process, where the detention serves no legitimate purpose, is contrary to the Immigration & Nationality Act, and disobeys Respondents' clear regulatory mandate.

26.   8 U.S.C. § 1226(e) does not preclude this Court's review of Ferrera Bejarano's detention. 8 U.S.C. § 1226(e) precludes review of DHS's "discretionary

judgment regarding the application of [Section 1226]." 8 U.S.C. § 1226(e). But Ferrera Bejarano does not challenge a "discretionary judgment"; instead, he asserts that his continued detention violates due process. *See also Öztürk v. Trump*, 777 F. Supp. 3d 26, 33–34 & n.1 (D. Mass. 2025) (rejecting government's 1226(e) argument).

27.    Further, the Supreme Court has held § 1226(e) has no application to such claims challenging the legality of detention. *See Demore*, 538 U.S. at 516–17 ("Section 1226(e) contains no explicit provision barring habeas review, and . . . its clear text does not bar [a petitioner's] constitutional challenge" to the legal authority for their detention); *Nielsen*, 586 U.S. at 401 (Section 1226(e) does not bar challenges to "the extent of the statutory authority that the Government claims"). "Because the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" Ferrera Bejarano's challenge to the legal basis for detention "falls outside the scope of § 1226(e)." *Jennings*, 583 U.S. at 296.

28.    Finally, to the extent Respondents believe this Court does not have jurisdiction or should decline to exercise jurisdiction for a failure of administrative exhaustion, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216

(BIA 2025) articulated the government's position on detention and the Board is bound to follow the regulation at 8 C.F.R. § 1003.19(i)(2).[1]

29. This Court should find, just as the *Günaydın*, *Mohammed H.*, *Khalil*, and *Öztürk* courts found, that it has jurisdiction to consider Ferrera Bejarano's habeas petition and all claims therein.

## **PARTIES**

30. Petitioner Ferrera Bejarano is a citizen of Honduras. Prior to his detention, he was residing in South Dakota. He is not an arriving alien. Petitioner is not seeking admission. Ferrera Bejarano was detained in the Kandiyohi County Jail in Willmar, Minnesota prior to this Court's Preliminary Injunction.

31. Respondent Pamela Bondi is being sued in her official capacity as the Attorney General of the United States and the head of the Department of Justice, which encompasses the Board of Immigration Appeals ("BIA") and the immigration judges through the Executive Office for Immigration Review ("EOIR"). Attorney General Bondi shares responsibility for implementation and enforcement of the immigration detention statutes, along with Respondent Noem. Attorney General Bondi is a legal custodian of Ferrera Bejarano.

---

[1] To be abundantly clear, Ferrera Bejarano is not subject to statutory mandatory detention pursuant to 8 U.S.C. § 1226(c) or 1226a. He has not committed any act that would place him under such mandatory detention. This distinguishes his situation from that in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024).

32.    Respondent Kristi Noem is being sued in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, Secretary Noem is responsible for the administration of the immigration laws pursuant to § 103(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(a), routinely transacts business in the District of Minnesota, supervises the St. Paul ICE Field Office, and is legally responsible for pursuing Ferrera Bejarano's detention and removal. As such, Respondent Noem is a legal custodian of Ferrera Bejarano.

33.    Respondent Department of Homeland Security ("DHS") is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

34.    Respondent Sirce Owen is the Acting Director of EOIR and has ultimate responsibility for overseeing the operation of the immigration courts and the BIA, including bond hearings. She is sued in her official capacity.

35.    Respondent Executive Office for Immigration Review ("EOIR") is the adjudicative authority with jurisdiction over the removal and bond cases of Petitioner. Its authority includes individuals detained in Minnesota, Iowa, North Dakota, and South Dakota. This district is known as the Fort Snelling district.

36. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement, which oversees the detention of aliens in the United States. Mr. Lyons is sued in his official capacity. Defendant Lyons is responsible for Petitioner's detention.

37. Respondent Immigration and Customs Enforcement ("ICE") is the subagency within the Department of Homeland Security responsible for implementing and enforcing the Immigration & Nationality Act, including the detention of noncitizens.

38. Respondent Peter Berg is being sued in his official capacity as the Field Office Director for the St. Paul Field Office for ICE within DHS. In that capacity, Field Director Berg has supervisory authority over the ICE agents responsible for detaining Ferrera Bejarano. The address for the St. Paul Field Office is 1 Federal Drive, Fort Snelling, Minnesota 55111.

39. Respondent Sheriff Eric Tollefson is being sued in his official capacity as the Sheriff responsible for the Kandiyohi County Jail. Because Petitioner was detained in the Kandiyohi County Jail, Respondent had immediate day-to-day control over Petitioner and will once again if this habeas petition is denied.

## EXHAUSTION

40. ICE asserts authority to jail Ferrera Bejarano pursuant to DHS's own *ultra vires* regulation, 8 C.F.R. § 1003.19(i)(2), and the underlying assertion that

Ferrera Bejarano is subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A).

41.   No statutory requirement of exhaustion applies to Ferrera Bejarano's challenge to the lawfulness of his detention. *See, e.g.*, *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention."); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850, at *11 (W.D. Wash. Apr. 24, 2025) (citing *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) ("[T]his Court 'follows the vast majority of other cases which have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.'"); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025) ((citing *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

42.   Prudential exhaustion is not required when to do so would be futile or "the administrative body . . . has . . . predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992), superseded by statute on other grounds as stated in *Woodford v. Ngo*, 548 U.S. 81 (2006).

43. To the extent that prudential consideration may require exhaustion in some circumstances, Ferrera Bejarano has exhausted all effective administrative remedies available to him as he has already sought and been granted bond by an immigration judge. Any further efforts would be futile.

44. The Board of Immigration Appeals is bound to follow the regulation at 8 C.F.R. § 1003.19(i)(2) and the decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), so administrative exhaustion would be entirely futile.

45. Prudential exhaustion is also not required in cases where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 147. Every day that Ferrera Bejarano is unlawfully detained causes him and his family irreparable harm. *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016) ("Here, continued loss of liberty without any individualized bail determination constitutes the kind of irreparable harm which forgives exhaustion."); *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (explaining that "a loss of liberty" is "perhaps the best example of irreparable harm"); *Hamama v. Adducci*, 349 F. Supp. 3d 665, 701 (E.D. Mich. 2018) (holding that "detention has inflicted grave" and "irreparable harm" and describing the impact of prolonged detention on individuals and their families).

46. Prudential exhaustion is additionally not required in cases where the agency "lacks the institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." *McCarthy*, 503 U.S. at 147–48. Immigration agencies have no jurisdiction over constitutional challenges of the kind Ferrera Bejarano raises here. *See, e.g.*, *Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations."); *Matter of Akram*, 25 I. & N. Dec. 874, 880 (BIA 2012); *Matter of Valdovinos*, 18 I. & N. Dec. 343, 345 (BIA 1982); *In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Matter of U-M-*, 20 I. & N. Dec. 327 (BIA 1991).

47. "Petitioner will find no recourse on this particular constitutional claim [challenging the automatic stay] through administrative mechanisms." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666–67 (D.N.J. 2003).

48. Because requiring Ferrera Bejarano to exhaust administrative remedies would be futile, would cause him irreparable harm, and the immigration agencies lack jurisdiction over the constitutional claims and have predetermined the issue, this Court should not require exhaustion as a prudential matter.

49. In any event, Ferrera Bejarano has indeed exhausted all remedies available to him. Ferrera Bejarano sought his release in a bond hearing and was granted

15

bond, yet remained detained because Respondents invoked an automatic stay

filed that initially prevented Petitioner from paying the ordered bond amount.

## **FACTUAL ALLEGATIONS & PROCEDURAL HISTORY**

50. Ferrera Bejarano is a native and citizen of Honduras.

51. Ferrera Bejarano entered the United States without inspection in or around

    2018, when he was around fifteen or sixteen years old.

52. On July 7, 2025, Ferrera Bejarano was pulled over, arrested, and charged for

    driving without a valid license, speeding, and no proof of insurance in Rapid

    City, South Dakota.

53. Ferrera Bejarano was held in the Pennington County Jail in Rapid City, South

    Dakota, pursuant to this arrest.

54. That same day, the Pennington County Jail contacted ICE regarding Ferrera

    Bejarano, and ICE placed an I-247 Immigration Detainer with the Pennington

    County Jail after determining Ferrera Bejarano was unlawfully present.

55. On July 8, 2025, Ferrera Bejarano was released from Pennington County Jail

    on a personal recognizance bond in relation to his still-pending traffic charges.

56. That same day, upon his release, Ferrera Bejarano was immediately

    transported to ICE's Rapid City Office of Enforcement and Removal

    Operations.

57.    That same day, Respondents served a Notice to Appear on Ferrera Bejarano, thereby initiating removal proceedings under 8 U.S.C. § 1229a.

58.    While they served the Notice to Appear, Respondents served Ferrera Bejarano with a Form I-200 Warrant of Arrest and Form I-286 Notice of Custody Determination.

59.    The Form I-286 expressly states, "Pursuant to the authority contained in *section 236* of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations" (emphasis added), indicating Respondents are acting under 8 U.S.C. § 1226 and not 8 U.S.C. § 1225.

60.    Respondents continue to hold Ferrera Bejarano in ICE custody.

61.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

62.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades. Id.

17

63.   On July 29, 2025, Respondents transferred Ferrera Bejarano from the Pennington County Jail in Rapid City, South Dakota, to the Kandiyohi County Jail in Willmar, Minnesota.

64.   On July 29, 2025, Ferrera Bejarano sought a custody redetermination hearing before the immigration court sitting in Fort Snelling, Minnesota.

65.   On July 30, 2025, the Fort Snelling Immigration Court scheduled a custody redetermination hearing for Ferrera Bejarano to take place on August 7, 2025.

66.   On August 6, 2025, Respondents filed a Form I-213 Record of Inadmissible/Deportable Alien with the Immigration Court into Ferrera Bejarano's bond record.

67.   On August 6, 2025, the Attorney General issued a certified decision, *Matter of Gairat Akhmedov, Respondent*, 29 I. & N. Dec. 166 (BIA 2025), designating the case as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3).

68.   In *Matter of Gairat Akhmedov, Respondent*, 29 I. & N. Dec. 166, the respondent had entered unlawfully, yet the Attorney General stated that "[t]he respondent's custody determination is governed by the provisions of section 236(a) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a)," in clear contradiction with ICE's July 8, 2025, policy that all individuals who entered unlawfully are detained under 8 U.S.C. § 1225 rather than 8 U.S.C. § 1226(a).

18

69.    While the underlying bond proceeding in *Matter of Akhmedov* occurred before July 8, 2025, Respondent Attorney General certified the decision as precedential after July 8, 2025. Respondent Attorney General certified the decision as precedential when the individual was someone who entered without inspection. Respondent Attorney General accepted that there was jurisdiction to certify this decision.

70.    On August 7, 2025, EOIR held a custody redetermination hearing for Ferrera Bejarano at the Fort Snelling Immigration Court.

71.    At Ferrera Bejarano's custody redetermination hearing, Immigration Judge Kalin Ivany ("IJ Ivany") found, pursuant to *Matter of Akhmedov*, that Ferrera Bejarano was not subject to mandatory custody under 8 U.S.C. § 1225(b)(2) because *Matter of Akhmedov*, which had just been designated as precedent, explicitly stated that 8 U.S.C. § 1226(a) governed the respondent's custody.

72.    In her oral decision and in response to Respondent ICE's arguments, IJ Ivany noted that subject-matter jurisdiction is always at issue and cannot be waived, and that *Matter of Akhmedov*'s decision invoking 8 U.S.C. § 1226(a) refuted Respondent ICE's argument that 8 U.S.C. § 1225(b)(2) applies.

73.    After finding that 8 U.S.C. § 1226(a) governed Ferrera Bejarano's detention, IJ Ivany further found that Ferrera Bejarano was neither a danger to the

community nor a sufficient flight risk so that release should be denied. The immigration court set a bond amount of $20,000.

74. DHS filed Form EOIR-43 to invoke an invoke an automatic regulatory stay of the bond grant pursuant to 8 C.F.R. § 1003.19(i)(2), thereby compelling action contrary to a judge's ruling Ferrera Bejarano's continued detention.[2]

75. On August 18, 2025, this Court granted Petitioner's request for a TRO, converting it to a Preliminary Injunction, and ordering Respondents to permit Petitioner to post bond and release him.

76. On August 19, 2025, Petitioner posted bond and was released from custody.

77. On September 5, 2025, the Board decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), cementing its position that all noncitizens present in the United States without admission or parole are subject to mandatory detention at the administrative level.

78. Should the Court deny the habeas petition, the preliminary injunction would be dissolved and Petitioner would be subject to Respondebnts' custody once again.

## **LEGAL FRAMEWORK**

79. Ferrera Bejarano was taken into custody pursuant to 8 U.S.C. § 1226(a), which states, "On a warrant issued by the Attorney General, an alien may be arrested

---

[2] As of August 12, 2025, Respondents have not filed a bond appeal with the BIA.

and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) allows the Attorney General, through immigration judges, to continue to detain the noncitizen or release him on either conditional parole or a bond of at least $1,500.00. 8 U.S.C. § 1226(a)(1)-(2). Following these procedures, IJ Ivany ordered DHS to release Ferrera Bejarano on a bond in the amount of $20,000.00.

80.    As IJ Ivany confirmed, Ferrera Bejarano is not  subject to statutory mandatory detention under 8 U.S.C. § 1225(b)(2).

81.    Despite DHS's best efforts, it could not keep Ferrera Bejarano in statutory mandatory detention under 8 U.S.C. § 1225(b)(2).

82.    DHS persisted nonetheless.   Respondent Immigration & Customs Enforcement kept Petitioner detained pursuant to 8 C.F.R. § 1003.19(i)(2) by filing a simple form to invoke an automatic regulatory stay until this Court granted a preliminary injunction ordering them to accept his bond and release him.

83.    An immigration judge cannot review the automatic stay stay.

84.    Ferrera Bejarano was detained solely at the unilateral behest of DHS, pursuant to a regulation written by executive agencies, not Congress: 8 C.F.R. § 1003.19(i)(2). This regulation states, in whole:

> *Automatic stay in certain cases.* In any case in which DHS has determined that an alien should not be released or has set a bond

of $10,000 or more, **any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order**, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2) (emphasis added).

85.   The regulations expand on the related procedures in 8 C.F.R. § 1003.6(c). "If the Board has not acted on the custody appeal, the automatic stay shall lapse 90 days after the filing of the notice of appeal." 8 C.F.R. § 100.36(c)(4).

86.   However, the regulations provide for DHS's continued power to keep a noncitizen detained <u>even after the automatic stay lapses</u>.[3]

---

[3] Further to Ferrera Bejarano's assertion that there is no end in sight to his detention if this habeas is not granted, there are no clear procedures outside of the regulation governing how the process plays out. A 2006 EOIR policy memorandum provided limited guidance; however, that policy memorandum was explicitly rescinded in December 2020. *See* EOIR Memo on Procedures for Automatic Stay Cases (Oct. 31, 2006) available at https://www.aila.org/library/eoir-memo-on-procedures-for-automatic-stay-cases; EOIR Policy Memo 21-22, Cancellation of Certain Operating Policies and Procedures Memoranda (Dec. 22, 2020) available at https://www.aila.org/library/eoir-memo-cancelling-certain-oppm. Additionally, a 2006 ICE policy memorandum regarding the automatic stay concedes that the 90-day time period for the automatic stay is flexible and there are circumstances under which the 90-day time limit may increase. *See* ICE Memorandum on Revised Procedures for Automatic Stay of Custody Decisions by Immigration Judges (Oct. 26, 2006) available at https://www.aila.org/library/ice-releases-revised-procedures-for-automatic-stay.

87.  "DHS may seek a discretionary stay pursuant to 8 C.F.R. § 1003.19(i)(1) to stay the immigration judge's order in the event the Board does not issue a decision on the custody appeal within the period of the automatic stay." 8 C.F.R. § 1003.6(c)(5). All DHS must do is submit a motion, and "may incorporate by reference the arguments presented in its brief in support of the need for continued detention of the alien during the pendency of the removal proceedings." *Id*.

88.  If the BIA has not resolved the custody appeal within 90 days and "[i]f the Board fails to adjudicate a previously-filed stay motion by the end of the 90-day period, the stay will remain in effect (but not more than 30 days) during the time it takes for the Board to decide whether or not to grant a discretionary stay." 8 C.F.R. § 1003.6(c)(5).

89.  If the BIA rules in a noncitizen's favor, authorizing release on bond, or denying DHS's motion for a discretionary stay, "the alien's release shall be automatically stayed for five business days." 8 C.F.R. § 1003.6(d).

90.  This additional five-day automatic stay in the event of the BIA authorizing a noncitizen's release is to provide DHS with another opportunity to keep the person detained despite orders to the contrary.

91.  "If, within that five-day [automatic stay] period, the Secretary of Homeland Security or other designated official refers the custody case to the Attorney

General pursuant to 8 C.F.R. § 1003.1(h)(1), the alien's release shall continue to be stayed pending the Attorney General's consideration of the case. The automatic stay will expire 15 business days after the case is referred to the Attorney General." 8 C.F.R. § 1003.6(d).

92.    "DHS may submit a motion and proposed order for a discretionary stay in connection with referring the case to the Attorney General…The Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or by the Board." 8 C.F.R. § 1003.6(d).

93.    Thus, even if the BIA upheld IJ Ivany's order granting Ferrera Bejarano bond and ordered him released, he would remain in detention for five more days while DHS is given the opportunity to refer the case to the Attorney General pursuant to 8 C.F.R. § 1003.1(h)(1). 8 C.F.R. § 1003.6(d). The same additional automatic five-day stay applies if the BIA denies DHS's motion for discretionary stay or fails to act on such a motion before the automatic stay period expires. *Id*. If the case is referred to the Attorney General, that second automatic stay expires 15 business days after referral. *Id*. DHS may thereafter file another motion for discretionary stay. *Id*. Importantly, if a case is referred to the Attorney General, "[t]he Attorney General may order a discretionary stay pending the disposition of any custody case by the Attorney General or

by the Board." *Id.* There is no proscribed time limit for this stay or these decisions.

94.     The scheme, plainly designed by the executive branch to give DHS the power to circumvent both immigration judge and BIA orders, can be summarized as follows:

- Immigration judge orders DHS to release noncitizen on bond
    - DHS files Form EOIR-43 notice of intent to appeal within one business day, invoking automatic stay. 8 C.F.R. § 1003.19(i)(2).
    - DHS files Form EOIR-26 notice of appeal within ten business days. 8 C.F.R. § 1003.6(c)(1).
    - Automatic stay lapses 90 days after DHS files EOIR-26 notice of appeal. 8 C.F.R. § 1003.6(c)(4).
    - DHS may seek discretionary stay before 90 days lapse. 8 C.F.R. § 1003.6(c)(5); 1003.19(i)(1).
- BIA orders release on bond <u>or</u> denies discretionary stay motion
    - Release is automatically stayed for an additional five business days. 8 C.F.R. § 1003.6(d).
    - Within that five-business day automatic stay, DHS may refer the case to the Attorney General. 8 C.F.R. § 1003.6(d).

- Automatic stay is extended for 15 business days after DHS refers the case to the Attorney General. 8 C.F.R. § 1003.6(d).

- DHS may seek a discretionary stay with the Attorney General for the duration of the case. 8 C.F.R. § 1003.6(d).[4]

95. To be clear, the regulations are written in such a way that <u>it does not matter what the immigration judge or BIA orders</u>; if DHS disagrees, DHS can, through its own actions and per its own regulations, keep the noncitizen detained. This is indefinite detention without any right of legal intervention.

96. "Indefinite detention of a [noncitizen]" raises "a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The automatic stay provision detains individuals indefinitely, without a "discernible termination point" (*Ashley v. Ridge*, 288 F. Supp. 2d 662, 672 (D.N.J. 2003)), "definite termination point" (*Zabadi v. Chertoff*, No. C 05-01796 WHA, 2005 WL 1514122, at *1 (N.D. Cal. June 17, 2005) (unpublished)), "finite time frame" (*Id.*), "certain time parameters for final resolution" (*Zavala v. Ridge*, 310 F.

---

[4] Either party may petition for the Eighth Circuit to review a removal decision. 8 U.S.C. § 1252(a). A separate motion for stay would have to accompany such a petition in order to stay the decision pending appeal. 8 U.S.C. § 1252(b).

Supp. 2d 1071, 1075 (N.D. Cal. 2004)), or "ascertainable end point" (*Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 449–450 (D. Conn. 2003)).[5]

97.    The automatic stay regulation does not provide a detained person the capacity to seek review from an immigration judge—a clear due process violation. A

---

[5] Unlike the 2006 version of the automatic stay regulation (8 C.F.R. § 1003.19(i)), the 2001 version (8 C.F.R. § 3.19(i)(2)) did not proscribe a 90-day limit. However, the court's reasoning in *Ashley v. Ridge* and the other cases decided before 2006 is still on point and persuasive. The regulation as written today still allows for essentially indefinite detention via DHS's filing motions for discretionary stays and/or referrals to the Attorney General, as detailed in ¶¶ 70–81 *supra. See also* Raha Jorjani, *Ignoring the Court's Order: The Automatic Stay in Immigration Detention Cases*, 5 Intercultural Hum. Rts. L. Rev. 89 (2010), available at https://scholarship.stu.edu/ihrlr/vol5/iss1/6 ("While the 2001 regulations were later revised in response to public concern, these changes failed to cure the previous constitutional defects.") ("[T]he so-called "90 day limitation" of the new regulations can be dangerously deceptive… The automatic stay regulations allow for continued detention well beyond 90 days.") ("More fundamentally, however, the limitation, be it 90 days, 150 days, or 177 days, does not cure the fundamental due process problem that occurs when a non-prevailing party can unilaterally stay a decision as critical as one having to do with the liberty of another human being…[T]he automatic stay presents an affront to the adversarial system."). Additionally, the 2006 version now requires that a "senior legal official of DHS" certify that s/he has approved the filing of the stay and that there is factual and legal support justifying continued detention of the detained individual. This modification does nothing to cure the constitutional defects of the 2001 version. "In effect, the regulations require only that DHS approve its own legal strategy. By requiring that DHS determine the validity of its own legal position, the regulations are tantamount to permitting DHS to adjudicate the identical legal issue that it is prosecuting before an independent authority." *Id*. "Furthermore, the new regulations require that DHS certify only that there is factual and legal support, without having to articulate what that support is or what evidence is being relied upon for such a conclusion." *Id*.

noncitizen subject to DHS's arrest and continued detention despite an immigration judge ordering his release has no method to challenge the automatic stay before the immigration court or BIA. *See Ashley*, 288 F. Supp. 2d at 675 ("[C]ontinued detention of alien without judicial review of the automatic stay of bail determination violated alien's procedural and substantive due process rights.").

98. Respondents' sole justification for Ferrera Bejarano's detention is that they insist, despite clear precedent and evidence to the contrary, *see infra*, that all noncitizens who are present without admission or parole are subject to mandatory custody under 8 U.S.C. § 1225(b)(2). Based on DHS's position and actions over the last month, and the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), there is every reason to believe DHS will appeal every order and employ every legal mechanism to keep Ferrera Bejarano and others like him detained.

99. The court in Minnesota very recently addressed this issue in Aguilar Maldonado v. Olson et al, 25-CV-03142. The Court granted a preliminary injunction.

100. "[W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Zadvydas*, 533 U.S. at 690.

101. Enacted just one month after the events of 9/11, the 2001 automatic stay regulation was a drastic change, one which passed without public comment. In authorizing publication of the rule, then Attorney General John Ashcroft called the notice and comment process "impracticable, unnecessary, and contrary to the public interest." Executive Office for Immigration Review; Review of Custody Determinations, 66 FR 54909-02.

102. "The Attorney General articulated several bases for the necessity of the automatic stay provision: (1) a concern that with the passage of time, there would be an increased risk that a dangerous alien may be released; (2) the need to avoid a case-by-case determination of whether a stay should be granted in cases in which the Service had already determined that the alien should be kept without bail or with bail in excess of $10,000; and, (3) a concern that the time difference between the east and west coast would permit the release of a dangerous alien after the Board had closed for the day, effectively eliminating the opportunity for an emergency appeal of the immigration judge's release order." *Zavala*, 310 F. Supp. 2d at 1076–77.

103. To be perfectly clear: "the purpose for the automatic stay provision is to prevent the alien from fleeing and to protect the public from harm." *Ashley*, 288 F. Supp. 2d at 669. Where, as here, the immigration judge has already made a determination as to a noncitizen's danger and flight risk, the purpose

of the automatic stay provision is fulfilled or assuaged. The court in *Zavala*, 310 F. Supp. 2d 1071 found exactly that: "The Immigration Judge, after a full hearing, including the presentation of evidence and a full opportunity for cross-examination, determined that Petitioner did not pose a danger to the community nor a significant flight risk, and released him on $5,000 bail. The bond determination by the Immigration Judge already addressed the government's stated safety concerns." *Zavala*, 310 F. Supp. 2d at 1077.

104.    In any situation in which the automatic stay is invoked, an immigration judge has necessarily already made a determination that the noncitizen is neither a flight risk nor a danger to the community. In any situation in which the automatic stay is invoked, an immigration judge has already addressed DHS's concerns that formulate the purpose of the stay itself.

105.    The Automatic Stay provision is also *ultra vires*. Respondents' invocation of this regulation to detain individuals like Ferrera Bejarano indefinitely without a right of review violates both substantive and procedural due process. Multiple courts have explicitly agreed. *See, e.g.*, *Ashley*, 288 F. Supp. 2d 662; *Bezmen*, 245 F. Supp. 2d 446; *Zavala*, 310 F. Supp. 2d 1071; *Zabadi*, 2005 WL 1514122; *Uritsky v. Ridge*, 286 F. Supp. 842 (E.D. Mich. 2003); *Günaydın v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025); *see also McCullock v. Kane*, No. CV 07-2274-

PHXJWSECV, 2008 WL 5460211, at *2 (D. Ariz. Dec. 18, 2008) ("The constitutionality of the automatic stay regulation at 8 C.F.R. § 1003.19(i)(2) has been successfully challenged by habeas petitioners in several district courts.").

106. Congress conferred the power to determine release on bond to the Attorney General, through immigration judges. *See* 8 U.S.C. § 1226(a).

107. 8 C.F.R. § 1003.19(i)(2) circumvented Congress, taken that power away from the immigration judges and Attorney General, and conferred detention authority solely on Respondent Immigration & Customs Enforcement. An immigration regulation which is inconsistent with the statutory scheme is invalid.

108. *Altagracia Almonte-Vargas v. Elwood*, No. CIV.A. 02-CV-2666, 2002 WL 1471555 (E.D. Pa. June 28, 2002) observed that when a noncitizen was granted bond but remained in detention pursuant to the automatic stay regulation. "due process is not satisfied where the individualized custody determination afforded to Petitioner was effectively a charade. By pursuing an appeal of the Immigration Judge's bond determination…the INS has nullified that decision[.]" *Id.* at 5 (emphasis added).

109. The court in *Zavala v. Ridge*, 310 F. Supp. 2d 1071 (N.D. Cal. 2004) also ruled,

31

> The automatic stay provision of 8 C.F.R. § 1003.19(i)(2) effectively eliminates the discretionary nature of the immigration judge's determination and results in a mandatory detention for the class of aliens who have been held [by ICE] without bail or on over $10,000 bond. As a result of the regulation, the immigration judge's individualized determination that the alien poses neither a danger to the community nor a significant flight risk is automatically stayed upon filing of an appeal. The regulation therefore has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention. The automatic stay provision permits the government to impose mandatory detention, contrary to the immigration judge's finding, in all cases in which the Service has predetermined that the alien should be held without bail or has set bond at $10,000 or more.

*Zavala*, 310 F. Supp. 2d at 1079; *see also Zabadi*, 2005 WL 1514122, at *1 (finding the automatic stay regulation "*ultra vires* because it eliminates the discretionary authority of immigration judges to determine whether an individual may be released"); *Ashley*, 288 F. Supp. 2d at 672–73 ("As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § [1003.19](i)(2).").

110. DHS's automatic stay is an extraordinary and unconstitutional regulation unique to the immigration context. "A stay pending appeal . . . has functional overlap with an injunction, particularly a preliminary one." *Nken v. Holder*, 556 U.S. 418, 428 (2009). "A stay is not a matter of right, even if irreparable

injury might otherwise result" but instead is "an exercise of judicial discretion." *Id.* at 433 (internal quotation marks omitted).

111.   In federal courts, to seek the stay of a judgment pending appeal, a motion must be made either to the District Court or to the Court of Appeals. Fed. R. Civ. P. 8(a). A stay pending appeal is "an extraordinary remedy." *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973). For this reason, the motion must show a likelihood of success on the merits, irreparable harm, and that the stay is in the public interest. *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Notably, these requirements and safeguards apply in the civil context, where detention or loss of liberty is not on the line.

112.   Because liberty and detention are in issue here, a more apt comparison is to the criminal context. First, when a criminal defendant is found not guilty after trial, the government has no right of appeal. *See* U.S. Const. amend. V, cl. 2 (providing that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb"). However, 18 U.S.C. § 3731 provides for the government to appeal an order "granting the release of a person charged with or convicted of an offense[.]"

113.   In order for the government to seek a stay of judgment pending appeal in the criminal context, it must follow the Federal Rules of Appellate Procedure, present a motion, and meet the *Nken* factors. *See* Fed. R. App. P. 8(a).

33

114.    In contrast, all DHS must do in order keep a noncitizen detained via the automatic stay is file a simple two-page form, EOIR-43. This form is available in digital format and requires DHS to fill in the following information: (1) the date, (2) the noncitizen's name and A-number, (3) the date of the immigration judge's decision, and (4) the amount of bond granted. .

115.    A close read of the regulation indicates that a senior legal official must certify the appeal and approve the filing for the automatic stay to remain in effect. 8 C.F.R. § 1003.6(c).

116.    While this provision creates the illusion of an additional safeguard, in practice, the "certification" signed in Ferrera Bejarano's case contains language lifted directly from the regulation.    There is an absence of any individualized reasoning.

117.    Respondents crafted a regulation to circumvent the reasonable and typical requirements for a stay pending appeal.  Respondents bestowed Respondent Immigration & Customs Enforcement an extraordinary remedy lacking any procedural guards.  Unilateral power of this nature is violative of due process and exceeds Congress' authorization.

118.    Removal proceedings are governed under 8 U.S.C. § 1229a, which provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1), and that

"[u]nless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States." 8 U.S.C. § 1229a(a)(3).

119. To initiate removal proceedings, "written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1).

120. The "[a]pprehension and detention of aliens" is governed by a different provision of the code, 8 U.S.C. § 1226, which provides that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General … may release the alien on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.

8 U.S.C. § 1226(a)(2)(A) (emphasis added).

121. Initiation of removal proceedings is an independent section of law. 8 U.S.C. § 1229.

122. The issue of whether an individual is subject to mandatory versus discretionary detention is an independent question that is not relevant to the operation of 8 U.S.C. § 1229.

123. Petitioner is not challenging Respondent's authority to initiate, commence, or complete a removal proceeding. This is a matter of apprehension and detention exclusively.

124. The sole issue before the Court is Respondents' detention of Petitioner during the pendency of his removal proceedings.

125. 8 U.S.C. § 1252 is not a bar to the Court resolving the pure legal question of whether Petitioner is subject to mandatory custody or eligible to apply for a discretionary bond.

126. The regulations provide that, to detain a person under 8 U.S.C. § 1226(a), the Department must issue an I-200 to take a person into custody; and that such a person is subject to release on bond. The regulation states:

> (b) Warrant of arrest—
>
> (1) In general. **At the time of issuance of the notice to appear, or at any time thereafter** and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.
>
> (2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.
>
> (c) Custody issues and release procedures—
>
> (1) In general.

> (i) After the expiration of the Transition Period Custody Rules (TPCR) set forth in section 303(b)(3) of Div. C of Pub.L. 104–208, no alien described in section 236(c)(1) of the Act may be released from custody during removal proceedings except pursuant to section 236(c)(2) of the Act.

8 C.F.R. § 236.1(b) (emphasis added).

127.  8 U.S.C. § 1226(a) is the default detention authority, and it applies to anyone who is detained "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).

128.  8 U.S.C. 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

129.  8 U.S.C. § 1226(a) applies not just to persons who are deportable, but also to noncitizens who are inadmissible. Specifically, while § 1226(a) provides the general right to seek release, § 1226(c) carves out discrete categories of noncitizens from being released—including certain categories of inadmissible noncitizens—and subjects those limited classes of inadmissible aliens instead to mandatory detention. *See, e.g.*, 8 U.S.C. § 1226(c)(1)(A), (C).

130.  The Laken Riley Act (LRA) added language to § 1226 that directly references people who have entered without inspection or who are present without authorization. *See* LAKEN RILEY ACT, PL 119-1, January 29, 2025, 139 Stat 3.

Pursuant to these amendments, people charged as inadmissible under § 1182(a)(6)(A) (the inadmissibility ground for entry without inspection) or (a)(7)(A) (the inadmissibility ground for lacking valid documentation to enter the United States) and who have been arrested, charged with, or convicted of certain crimes are subject to § 1226(c)'s mandatory detention provisions. *See* 8 U.S.C. § 1226(c)(1)(E).

131. By including such individuals under § 1226(c), Congress reaffirmed that § 1226 covers persons charged under § 1182(a)(6)(A) or (a)(7).

132. Grounds of deportability (found in 8 U.S.C. § 1227) apply to people like lawful permanents residents, who have been lawfully admitted and continue to have lawful status, while grounds of inadmissibility (found in § 1182) apply to those who have not yet been admitted to the United States. *See, e.g.*, *Barton v. Barr*, 590 U.S. 222, 234 (2020); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850, at *12 (W.D. Wash. Apr. 24, 2025) ("[W]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010))).

133. The "[i]nspection by immigration officers[,] expedited removal of inadmissible arriving aliens[,] [and] referral for hearing" is governed under 8

U.S.C. § 1225, which provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).

134. "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3).

135. "If an immigration officer determines that an alien … who is arriving in the United States … is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added).

136. "If the officer determines at the time of the interview that an alien has a credible fear of persecution … the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

137. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a

proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

138. 8 U.S.C. § 1225(b)'s mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.

139. By regulation, "[*a*]*rriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

140. "[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to … [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

141. As such, arriving aliens are not entitled to bond, nor, arguably, are aliens falling within the confines of 8 U.S.C. § 1225(b).

142. Congress did not intend to subject all people present in the United States after an unlawful entry to mandatory detention if arrested. Prior to the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which codified both 8 U.S.C. § 1225 and 8 U.S.C. § 1226, aliens present without admission were not necessarily subject to mandatory detention. *See* 8 U.S.C. § 1252(a)(1) (1994) (authorizing Attorney General to arrest noncitizens for deportability proceedings, which applied to all persons within the United States).

143. In articulating the impact of IIRIRA, Congress noted that the new § 1226(a) merely "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond a[] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (emphasis added); *see also* H.R. Rep. No. 104-828, at 210 (same).

144. Respondents' longstanding practice of considering people like Petitioner as detained under § 1226(a) further supports reading the statute to apply to them. Typically, as Respondents did in Ferrera Bejarano's case, DHS issues a person Form I-286, Notice of Custody Determination, or Form I-200, Warrant for Arrest of Alien, stating that the person is detained under § 1226(a) (§ 236 of the INA).

145. As these arrest documents demonstrate, DHS has long acknowledged that §
     1226(a) applies to individuals who entered the United States unlawfully, but
     who were later apprehended within the country's borders long after their
     entry. Such a longstanding and consistent interpretation "is powerful evidence
     that interpreting the Act in [this] way is natural and reasonable." *Abramski v.
     United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also
     Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part
     on "over 60 years" of government's interpretation and practice to reject its
     new proposed interpretation of the law at issue).

146. EOIR regulations have long recognized that Petitioner is subject to detention
     under § 1226(a). Nothing in 8 C.F.R. § 1003.19—the regulatory basis for the
     immigration court's jurisdiction—provides otherwise.

147. In fact, EOIR confirmed that § 1226(a) applies to Petitioner when it
     promulgated the regulations governing immigration courts and implementing
     § 1226 decades ago. At that time, EOIR explained that "[d]espite being
     applicants for admission, [noncitizens] who are present without having been
     admitted or paroled (formerly referred to as [noncitizens] who entered without
     inspection) will be eligible for bond and bond redetermination." Inspection
     and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct

of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323.

148. In *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (BIA 2020), the Board referenced § 1226(a) as the detention authority for a noncitizen who unlawfully entered the United States the prior year and was detained soon thereafter.

149. In *Matter of Gairat Akhmedov, Respondent*, 29 I. & N. Dec. 166, the Attorney General referenced § 1226(a) as the detention authority for a noncitizen who unlawfully entered the United States three years prior and appears to have been detained soon thereafter.

150. Congress separately defined how Respondents initiate removal proceedings. 8 U.S.C. § 1229a(a)(3) provides that "a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."

151. The sole exception is the expedited removal process under 8 U.S.C. § 1228 for individuals convicted of aggravated felonies.

152. 8 C.F.R. § 1003.14(a) confirms that Respondents also maintain that proceedings "initiate" or "commence" under 8 U.S.C. § 1229a. The regulation states, "Jurisdiction vests, and proceedings before an Immigration

43

Judge *commence*, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a) (emphasis added).

153. There is no reference to a person's custody status in 8 C.F.R. § 1003.14(a).

154. The commencement or initiation of proceedings is a separate question from how and why Respondents apprehend and detain an individual.

155. Respondents—as a matter of plain statutory language and explicit regulatory recognition—cannot assert that Respondents "initiate" proceedings under the authority of 8 U.S.C. § 1225(b)(2).

156. As applied to Ferrera Bejarano, the automatic stay provision of 8 C.F.R. § 1003.19(i)(2) is unconstitutional. Respondents' decision to prolong his detention under this regulation violates Ferrera Bejarano's rights to substantive due process and procedural due process under the Fifth Amendment of the United States Constitution.

157. First, two courts in this District recently analyzed the legality of the automatic stay. *See Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1334847, at *6 (D. Minn. May 5, 2025); *Günaydın v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 (D. Minn. May 21, 2025). The petitioners in those cases were also detained subject to the automatic stay and challenged the constitutionality of that provision as violating their due process rights. *Id*. The court in *Mohammed H.* noted, "**the Government's use of the**

44

**automatic stay in Petitioner's case raises a substantial Fifth Amendment claim**." *Mohammed H.*, 2025 WL 1334847, at *6 (emphasis added). The court reasoned that the automatic stay requires no showing of dangerousness or flight risk and is not reviewable by an immigration judge. *Id*. The court in *Günaydın* concluded that the automatic stay regulation at § 1003.19(i)(2) violates [Petitioner]'s procedural due process rights under the Fifth Amendment." *Günaydın*, 2025 WL 1459154, at *10 (emphasis added). The court reasoned that all three *Mathews v. Eldridge* factors favored the petitioner's position. *Id.*

158. This Court should find, as the *Mohammed H.* court did, that the automatic stay "operates by fiat and has the effect of prolonging detention even after a judicial officer has determined that release on bond is appropriate. That mechanism's operation here—in the absence of any individualized justification—renders the continued detention arbitrary as applied." *Mohammed H.*, 2025 WL 1334847, at *6. In *Mohammed H.*, as here, "[w]ithout introducing evidence, the Government has wholly deprived Petitioner of notice and the chance to rebut its case for continued detention." *Id*.

159. Again, in determining whether due process has been violated, the Court should weigh (1) the private interest affected by the government action; (2)

45

the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

160. As to the first *Mathews v. Eldridge*, 424 U.S. 319 (1976) factor, the private interest affected by the government action, "Petitioner's liberty interest in remaining free from governmental restraint is of the highest constitutional import." *Zavala*, 310 F. Supp. 2d at 1076; *see also Ashley*, 288 F. Supp. 2d at 670–71 ("[F]reedom from confinement is a liberty interest of the 'highest constitutional import.'") (quoting *St. John v. McElroy*, 917 F. Supp. 243, 250 (S.D.N.Y. 1996)). "[B]eing free from physical detention is 'the most elemental of liberty interests.'" *Günaydın*, 2025 WL 1459154, at *7 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004)). Ferrera Bejarano has been detained for thirty-six days.

161. In assessing the first factor, "courts consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration." *Günaydın*, 2025 WL 1459154, at *7 (first citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021)

46

(involving noncitizen detainee held "alongside criminal inmates" at a county jail); and then citing *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020) (observing noncitizen was "not detained" but, rather, was incarcerated in conditions identical to those imposed on criminal defendants after being convicted of "violent felonies and other serious crimes")). Ferrera Bejarano was held at the Kandiyohi County Jail, which houses civil immigration detainees, pre-trial criminal arrestees, and incarcerated prisoners serving criminal sentences. "He [was] experiencing all the deprivations of incarceration, including loss of contact with friends and family…lack of privacy, and, most fundamentally, the lack of freedom of movement." *Günaydın*, 2025 WL 1459154, at *7. His plans to marry his U.S. citizen fiancée [were] significantly hindered as he is detained approximately 500 miles away from home. This would be the case again if the petition is denied.

162. As to the second *Mathews v. Eldridge* factor, this Court must look at the risk that current procedures will cause an erroneous deprivation of a private interest, and the extent to which that risk could be reduced by additional safeguards. A court in this District has already recently held that 8 C.F.R. § 1003.19(i)(2) "creates a substantial risk of erroneous deprivation of a detainee's interest in being free from arbitrary confinement." *Günaydın*, 2025

47

WL 1459154, at *8. Another court is considering this question at the time of this petition, *Aguilar Maldonado v. Olson*, 25-cv-03142.

163. As explained above, it is nearly guaranteed that the current procedures cause an erroneous deprivation of Ferrera Bejarano's liberty interest in remaining free from detention. An immigration judge has already determined that Ferrera Bejarano is neither a flight risk nor a danger to the community and has granted him bond.

164. Indeed, regarding the hearing provided to Ferrera Bejarano thus far, any semblance of due process provided therein was a mere mirage, a charade, an empty gesture void of significance. *See e.g.*, *Ashley*, 288 F. Supp. 2d at 668–69 ("In effect, the automatic stay provision rendered the Immigration Judge's bail determination an ***empty gesture***") (emphasis added); *Altagracia Almonte-Vargas v. Elwood*, No. CIV.A. 02-CV-2666, 2002 WL 1471555, at *5 (E.D. Pa. June 28, 2002) ("Due process is not satisfied where the individualized custody determination afforded to Petitioner was effectively a ***charade***… [P]ursuing an appeal of the Immigration Judge's bond determination [..] has nullified that decision.") (emphasis added).

165. Further, under the current regulatory scheme, there are no additional safeguards that could prevent this deprivation of liberty.

166.  Ferrera Bejarano already fought his case in a bond hearing and via written arguments regarding jurisdiction for bond. He presented evidence that he is not a danger to the community or a flight risk. IJ Ivany considered arguments by Ferrera Bejarano and DHS, exhibits and evidence presented by both parties, and issued a reasoned determination that Ferrera Bejarano is neither a flight risk nor a danger to the community.

167.  On the other hand, the automatic stay that kept Ferrera Bejarano detained prior to the PI is at the discretion of Respondent Immigration & Customs Enforcement.

168.  "A unilateral determination made by the Service attorney that effectively overrules the reasoned decision of the Immigration Judge poses a serious risk of error." *Zavala*, 310 F. Supp. 2d at 1076; *see also Ashley*, 288 F. Supp. 2d at 670–71 ("The risk of the erroneous deprivation of liberty is substantial, as the application of the automatic stay provision here was the result of a unilateral determination made by a BICE district director which overruled the bail decision made by an Immigration Judge. Unlike the typical requests for a stay which require a demonstration of the 'likelihood of success on the merits,' the automatic stay provision demands no such showing; in fact, as previously discussed, it was enacted precisely to avoid the need for such an individualized determination. Aliens like Petitioner can consequently remain

in detention no matter how frivolous the appeal by the Government"); *Zabadi*, 2005 WL 1514122, at *2 ("[T]he ability of the government to overturn or nullify an IJ's bail determination pending appeal without having to make a showing creates a risk of erroneous deprivation of the liberty interest"). "[T]he automatic stay regulation includes no requirement that the agency official invoking it consider any individualized or particularized facts, which increases the potential for erroneous deprivation of individuals' private rights." *Günaydın*, 2025 WL 1459154, at *8. Whereas an immigration judge making a bond determination "is required to tailor the decision to the individual and make a particularized assessment of the applicable factors[,]… an agency official invoking the automatic stay provision need not make *any* individualized or particularized justification for an action that results in the continued deprivation of liberty." *Id.* (emphasis in original).

169.  The automatic stay regulation "does not include any standards for the agency official to satisfy and operates as an appeal of right." *Günaydın*, 2025 WL 1459154, at *9. There is no requirement that DHS satisfy any threshold standard by making a showing of likelihood of success on the merits, risk of irreparable injury, and balance of interests. *Id.* This contravenes fundamental principles in which "a stay pending appeal is deemed an 'extraordinary remedy,' […] an 'intrusion into the ordinary processes of administration and

judicial review,' […] and is never awarded as a 'matter of right.'" *Id.* (internal citations omitted). Indeed, the automatic stay regulation turns "well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Id.*

170. "The procedure additionally creates a potential for error because it impermissibly merges and conflates the functions of adjudicator and prosecutor. *See Marcello v. Bonds*, 349 U.S. 302, 305–06 (1955) (holding that the special inquiry officer adjudicating over an immigration case cannot also undertake the functions of prosecutor in the same matter); *see also Ashley*, 288 F. Supp. 2d at 671 ("It produces a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified."); *Zavala*, 310 F. Supp. 2d at 1076 ("In this matter, the [side] who lost before the Immigration Judge as a prosecutor, effectively overruled the decision as the adjudicator by invoking the automatic stay.

171. This unilateral procedure creates a risk of erroneous deprivation of the liberty interest."); *Zabadi*, 2005 WL 1514122, at *2 ("The prosecution who argued to [the] IJ that [the noncitizen] should be detained is the same [that] determined the [IJ's] bond determination should be automatically stayed

pursuant to section 1003.19(i)(2). This procedure impermissibly merges the functions of adjudicator and prosecutor.").[6]

172.    A court in this District recently held that in the context of challenges to 8 C.F.R. § 1003.19(i)(2), the second *Mathews v. Eldridge* factor weighs in favor of Petitioner because "the risk of deprivation is high because the only individuals adversely affected by this regulation are those detainees who have already prevailed in a judicial hearing." *Günaydın*, 2025 WL 1459154, at *8. The automatic stay regulation "permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions," and "[s]uch a rule is anomalous in our legal system" as it "represents a basic conflict of interest of which courts have disapproved in other contexts." *Id.* Simply put, "a rule permitting the non-prevailing

---

[6] *See also Structural Due Process in Immigration Detention*, Anthony Enriquez, 21 CUNY L. Rev. (2018), available at: https://academicworks.cuny.edu/clr/vol21/iss1/6 ("Where DOJ grants release, DHS may once again assume the role of detention adjudicator by automatically staying release through a ministerial filing… Neither a showing of likelihood of success on the merits of an appeal nor irreparable harm if release is granted is required for a stay to take effect. DHS substitutes its own judgment on custody for an immigration judge's by use of automatic stays of detention pending appeal to the BIA, without any showing of likelihood of success on the merits of the appeal or irreparable harm absent the stay of release. DOJ review of DHS detention decisions therefore *fails to meaningfully separate the jailer from the judge.*") (emphasis added).

government party to stay a judgment permitting a detainee's release creates the risk of erroneous deprivation." *Id.*

173. As to the third *Mathews v. Eldridge* factor, the government's interest in maintaining the current procedures is minimal here. As explained, IJ Ivany already made a determination as to dangerousness and flight risk. Further, the regulations still allow for DHS to seek a discretionary stay under 8 C.F.R. § 1003.19(i)(1), which would require some showing of likelihood of success on the merits. *Ashley*, 288 F. Supp. 2d at 670–71; *Zavala*, 310 F. Supp. 2d at 1079.

174. Further, the automatic stay regulation has been infrequently invoked historically. *See* Stacy L. Brustin, *A Civil Shame: The Failure to Protect Due Process in Discretionary Immigration Custody & Bond Redetermination Hearings*, 88 Brook. L. Rev. 163, 225 n.231 (2022) (providing data yielded from a DHS FOIA request showing considerable variance but revealing that, on average, DHS invoked an automatic stay twenty-six times per year over the last seven years). The implementing regulations also note that the automatic stay "is a rare and somewhat exceptional action in the first place." *See* Executive Office for Immigration Review; Review of Custody Determinations, 66 FR 54909-02 (describing the automatic stay as a "limited measure"). There is "little, if any, additional burden that Respondents face if

they were unable to invoke the automatic stay regulation" here. *See Günaydın*, 2025 WL 1459154, at *10.

175. To prevail on a claim asserting the deprivation of due process, a petitioner must also show "actual prejudice." *Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) (citation omitted). Actual prejudice occurs if "an alternate result may well have resulted without the violation." *Id.* (citation omitted) (internal quotations omitted); *see also Lazaro v. Mukasey*, 527 F.3d 977, 981 (9th Cir. 2008) (explaining that prejudice is not necessary where agency action was *ultra vires*).

176. As explained above, without invocation of the automatic stay, Ferrera Bejarano would have been released on bond immediately and would be home with his family and his friends. This is eventually what occurred afte the entrance of the PI, because IJ Ivany ordered DHS to release him on a $20,000.00 bond and he paid it when permitted to do so. The fact that he would be subject to re-detention if this petition were denied, despite that order, is clear prejudice.

## **REMEDY**

177. Respondents' detention of Ferrera Bejarano under 8 C.F.R. § 1003.19(i)(2) violates the Due Process Clause of the United States Constitution. Ferrera Bejarano's detention would violate the Fifth Amendment's guarantee that

"[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.

178. Due Process requires that detention "bear [] a reasonable relation to the purpose for which the individual [was] committed." *Zadvydas*, 533 U.S. at 690 (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

179. As applied to Ferrera Bejarano, the automatic stay provision of 8 C.F.R. § 1003.19(i)(2) is unconstitutional.

180. Respondents' decision to prolong his detention under this regulation violates Ferrera Bejarano's rights to substantive due process and procedural due process under the Fifth Amendment of the United States Constitution.

181. Respondents' policy of treating all aliens present in the United States without admission or parole as subject to mandatory custody is arbitrary and capricious, out of accordance with the law, violative of both 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a)(2), contrary to the Fifth Amendment of the United States Constitution, and constitutes a systematic failure to apply the custody procedural framework set forth at 8 U.S.C. § 1226(a)(2).

182. Ferrera Bejarano seeks a declaration affirming his immediate release and to respect the posted bond to the extent that 8 C.F.R. § 1003.19(i)(2) violates his constitutional rights and is *ultra vires* of the Immigration & Nationality Act.

183.  Respondents' justification for invoking the automatic stay is premised on a legally incorrect assertion that 8 U.S.C. § 1225(b)(2) controls.  It does not.

184.  Although neither the Constitution nor the federal habeas statutes delineate the necessary content of habeas relief, *I.N.S. v. St. Cyr*, 533 U.S. 289, 337 (2001) (Scalia, J., dissenting) ("A straightforward reading of [the Suspension Clause] discloses that it does not guarantee any content to . . . the writ of habeas corpus"), implicit in habeas jurisdiction is the power to order release. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained.").

185.  The Supreme Court has noted that the typical remedy for unlawful detention is release from detention. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674 (2008) ("The typical remedy for [unlawful executive detention] is, of course, release."); *see also Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995) (stating the function of habeas relief under 28 U.S.C. § 2241 "is to obtain release from the duration or fact of present custody").

186.  That courts with habeas jurisdiction have the power to order outright release is justified by the fact that, "habeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and that as an equitable remedy, federal courts "[have] broad discretion in conditioning a judgment granting

habeas relief [and are] authorized . . . to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (citing 28 U.S.C. § 2243). An order of release falls under the Court's broad discretion to fashion relief. *See, e.g.*, *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 636 (D. Mass. 2018) ("Habeas corpus is an equitable remedy. The court has the discretion to fashion relief that is fair in the circumstances, including to order an alien's release.").

187.  Immediate release is an appropriate remedy in this case.

## CAUSE OF ACTION

## COUNT ONE: DECLARATORY RELIEF

188.  Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

189.  Ferrera Bejarano requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that he is not subject to detention under to 8 U.S.C. § 1225(b)(2).

190.  Ferrera Bejarano requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that he was detained and released pursuant to 8 U.S.C. § 1226(a)(1).

191.  Ferrera Bejarano requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) is invalid as it is inconsistent with the text and structure of the INA.

192.    Ferrera Bejarano requests a declaratory judgment pursuant to 28 U.S.C. § 2201 that Ferrera Bejarano is eligible for release from Respondents' custody on bond consistent with the Immigration Judge's August 7, 2025, order.

## COUNT TWO: VIOLATION OF THE IMMIGRATION & NATIONALITY ACT – 8 U.S.C. § 1226(a)

193.    Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

194.    8 U.S.C. § 1226 governs the detention of aliens pending a determination of removal from the United States.

195.    Such an alien "may [be] release[d] … on bond of at least $1,500." 8 U.S.C. § 1226(a)(2)(A).

196.    Respondents' refusal to permit Petitioner Ferrera Bejaran to post the ordered bond was in violation of 8 U.S.C. § 1226(a)(2)(A) because he is eligible for release based on a discretionary bond determination.

197.    8 U.S.C. § 1225(b)(2)(A) cannot apply as it only applies to those "seeking admission" at the time of detention and Petitioner was not "seeking admission at the time he was detained, nor is he now. 8 U.S.C. § 1225(b)(2)(A).

198.    Respondents must affirm its preliminary decision to allow Ferrera Bejarano to pay the $20,000.00 bond consistent with the Immigration Judge's order and release Ferrera Bejarano pursuant to that order upon payment of the required bond.

## COUNT THREE: VIOLATION OF THE FIFTH AMENDMENT

199.  Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

200.  The Fifth Amendment Due Process Clause protects against arbitrary detention and requires that detention be reasonably related to its purpose and accompanied by adequate procedures to ensure that detention is serving its legitimate goals.

201.  Ferrera Bejarano is not subject to mandatory custody under the Immigration & Nationality Act and is therefore entitled to pay his bond and be released pursuant to the Immigration Judge's bond order. Respondents' denial constitutes a violation of the Fifth Amendment's guarantee of due process.

202.  Due process asks whether the government's deprivation of a person's life, liberty, or property is justified by a sufficient purpose. Here, there is no question that the government has deprived Ferrera Bejarano of his liberty. Ferrera Bejarano spent more than a month in civil immigration detention and will surely return to custody should this petition be denied.

203.  The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

204. The government's detention of Ferrera Bejarano is unjustified. Respondents have not demonstrated that Ferrera Bejarano needs to be detained. *See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Ferrera Bejarano cannot be safely released back to his community.

205. Ferrera Bejarano's detention is also punitive and bears no "reasonable relation" to any legitimate purpose for detaining him. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("nature and duration" of civil confinement must "bear some reasonable relation to the purpose for which the individuals is committed"); *Zadvydas*, 533 U.S. at 690 (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). His "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

206. Next, in addition to being *ultra vires* and unconstitutional (*see infra* Count Two), the automatic stay provision that Respondents invoked to keep Ferrera Bejarano detained is unconstitutional as applied to him and in violation of his due process rights. An immigration judge ordered DHS to release Ferrera

Bejarano on a bond of $20,000.00, and because DHS disagreed with that order, it invoked an emergency automatic stay of the order, rendering Ferrera Bejarano detained until this Court issued a PI permitting him to post bond.

207. The automatic stay regulation rendered Ferrera Bejarano's bond hearing a charade because the outcome did not matter. There is no due process when the outcome of the process does not matter.

208. Further, as an immigration judge has determined, Ferrera Bejarano is not subject to mandatory custody under the Immigration & Nationality Act, despite Respondents' assertions to the contrary.

209. The use of the automatic stay regulation to impose this incorrect assertion and effectively render Ferrera Bejarano detained under mandatory custody constitutes a violation of the Fifth Amendment's guarantee of due process.

210. Petitioner's ongoing detention violates the Due Process Clause of the Fifth Amendment.

## COUNT FOUR: ULTRA VIRES REGULATION - AUTOMATIC STAY PER 8 C.F.R. § 1003.19(I)(2)

211. Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

212. The regulation at 8 C.F.R. § 1003.19(i)(2) exceeds the authority given to the agency by Congress. The statute at 8 U.S.C. § 1226(a), which applies to Ferrera Bejarano, authorizes the discretionary release of a noncitizen.

213.  IJ Ivany found that 8 U.S.C. § 1226(a) applies to Ferrera Bejarano, that Ferrera Bejarano is not a danger to the community nor a sufficient flight risk so that release should be denied, and ordered DHS to release Ferrera Bejarano on bond in the amount of $20,000.00.

214.  Congress has created a class of individuals subject to mandatory detention by enacting 8 U.S.C. § 1226(c) and 8 U.S.C. § 1225. As Ferrera Bejarano falls under 8 U.S.C. § 1226(a), Congress requires that he be subject to an individualized determination regarding his release on bond.

215.  Congress has not authorized DHS to automatically stay Ferrera Bejarano's release after it has been granted by an immigration judge.

216.  For these reasons, the regulation at 8 C.F.R. § 1003.19(i)(2) is *ultra vires*.

## COUNT FIVE: VIOLATION OF 8 C.F.R. §§ 236.1, 1236.1 AND 1003.19 - UNLAWFUL DENIAL OF RELEASE ON BOND

217.  Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

218.  In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as

[noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323 (emphasis added).

219. The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before immigration courts under 8 U.S.C. § 1226 and its implementing regulations.

220. Nonetheless, DHS. the Board of Immigration Appeals, and all immigration judges have adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

221. Respondents' application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. § 236.1, 1236.1, and 1003.19.

## COUNT SIX: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – CONTRARY TO LAW AND ARBITRARY AND CAPRICIOUS AGENCY POLICY

222. Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

223. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

224. The mandatory detention provision at does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility.

225. 8 U.S.C. § 1225(b)(2) does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

226. Respondents have adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

227. The application of § 1225(b)(2) to Petitioner and those like him is arbitrary, capricious, out of accordance with law, contrary to constitutional right, and in excess of statutory authority, and thus it violates the APA as it is inconsistent with the text and structure of 8 U.S.C. §§ 1225(b)(2)(A); 1226(a) and the INA more generally. *See* 5 U.S.C. § 706(2).

228. As such, Petitioner requests that the Court set aside the application of *Matter of Yajure Hurtado*, within the jurisdiction of the Federal District of Minnesota and specifically to apply this set aside to the Immigration Court at Fort Snelling.

## **COUNT SEVEN: RELEASE PENDING ADJUDICATION**

229.  Ferrera Bejarano re-alleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

230.  Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); *see also Martin v. Solem*, 801 F.2d 324, 329, n.3 (8th Cir. 1986); *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020) (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id.* (quoting *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

231.  Just this summer, a court in this District ordered another similarly situated noncitizen released on bail pending adjudication of the underlying habeas petition. *Mohammed H.*, 2025 WL 1334847, at *8. There, as here, the noncitizen was held in detention pursuant to the automatic stay, despite being ordered released on bond by an immigration judge. *Id.*

232.    Under *Martin v. Solem*, 801 F.2d 324 (8th Cir. 1986), "to grant interim release the Court must find (1) a substantial federal constitutional claim that is not only clear on the law but also readily evident on the facts, and (2) the existence of exceptional circumstances justifying special treatment in the interests of justice." *Mohammed H.*, 2025 WL 1334847, at *3 (citing *Martin*, 801 F.2d at 329–30).

233.    As explained above, Ferrera Bejarano has raised a substantial federal constitutional claim that is both clear on the law and readily evident on the facts. DHS was given ample opportunity in a hearing to prove its case that 8 U.S.C. § 1225(b)(2) applies to Ferrera Bejarano, but could not do so. IJ Ivany found that 8 U.S.C. § 1226(a) applies to Ferrera Bejarano and ordered Ferrera Bejarano released on bond. Despite this clear, reasoned order, DHS asserted the power to circumvent the immigration judge's order and keep Ferrera Bejarano detained. The automatic stay forming the basis for Ferrera Bejarano's detention is unconstitutional. The constitutional violations against Ferrera Bejarano have been clearly articulated and are supported by the uncontroverted facts.

234.    Further, the exceptional circumstances here justify special treatment in the interest of justice. The *Mohammed H.* court found exceptional circumstances existed for the petitioner's release when he had been in custody for over a

66

month and the factual record demonstrated that "an unrefuted IJ finding that

Petitioner posed no danger." *Mohammed H.*, 2025 WL 1334847, at *7. The

*Mohammed H.* court further found reason to order the petitioner's interim

release because he could not "[d]etention also impairs his access to counsel

and places him at risk of transfer to a remote ICE facility, which could

frustrate meaningful judicial review even if jurisdiction technically remains

intact." *Id.* at 7. Ferrera Bejarano's situation is no different. Additionally,

"[t]he IJ's bond order has been effectively nullified by administrative fiat

rather than by judicial findings." *Id.* at 7. The facts here are, as explained

above, remarkably similar.

235. This petition raises substantial constitutional and statutory claims challenging

Ferrera Bejarano's arbitrary detention. Furthermore, extraordinary

circumstances exist that make Ferrera Bejarano's continued release essential

for the remedy to be effective.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner, Wuilmer Omar Ferrera Bejarano, asks this Court for the

following relief:

1. Assume jurisdiction over this matter.

2. Reaffirm the order restraining Respondents from attempting to move Ferrera

Bejarano from the State of Minnesota during the pendency of this Petition.

3.    Reaffirm the order requiring Respondents to provide 72-hour notice of any intended movement of Ferrera Bejarano.

4.    Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under 28 U.S.C. § 153.

5.    Reaffirm the order commanding Respondent ICE to process and accept Petitioner's bond payment consistent with the Immigration Judge's August 7, 2025, bond order.

6.    Declare that 8 C.F.R. § 1003.19(i)(2) violates Petitioner's Fifth Amendment Due Process rights.

7.    Declare that 8 C.F.R. § 1003.19(i)(2) is ultra vires the Immigration & Nationality Act.

8.    Declare that *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) is invalid as it is inconsistent with the text and structure of 8 U.S.C. §§ 1225(b)(2)(A); 1226(a) and the INA more generally.

9.    Order Respondents to continue to comply with the current bond determination, thereby making the imposition of the preliminary injunction permanent. .

10.    Declare that 8 U.S.C. § 12226 controls Petitioner's detention, and the Executive Office for Immigration Review has the legal authority to conduct a bond redetermination hearing.

11.    Declare that Respondents' action is arbitrary and capricious.

12.    Declare that Respondents failed to adhere to its regulations.

13.    Set aside Respondents' policy of treating all aliens heard before the Immigration Court at Fort Snelling, Minnesota, who are present in the United States without admission or parole as subject to mandatory custody under 8 U.S.C. § 1225(b)(2) as reflected in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

14.    Declare that Petitioner's detention despite an order granting bond violates the Due Process Clause of the Fifth Amendment.

15.    Grant Ferrera Bejarano reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

16.    Grant all further relief this Court deems just and proper.


DATED: September 22, 2025          Respectfully submitted,


/s/ *David Wilson*
David Wilson
MN Attorney Lic. No. 0280239
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, MN
(612) 436-7100 / dwilson@wilsonlg.com


/s/ *Gabriela Anderson*
Gabriela Anderson
Wilson Law Group
MN Attorney #0504395

3019 Minnehaha Avenue
Minneapolis, MN 55406
(612) 436-7100
ganderson@wilsonlg.com

*/s/ Cameron Giebink*
Cameron Giebink
Wilson Law Group
MN Attorney #0402670
3019 Minnehaha Avenue
Minneapolis, MN 55406
(612) 436-7100
cgiebink@wilsonlg.com

**Attorneys for Petitioner**

**Verification by**
**Petitioner Pursuant to 28 U.S.C. § 2242**

I am submitting this verification because I am the Petitioner's attorney. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus, including the statements regarding my detention status, are true and correct to the best of my knowledge.


/s/ David Wilson                               Date: September 19, 2025
David Wilson
MN Attorney Lic. No. 0280239
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, MN
(612) 436-7100 / dwilson@wilsonlg.com

71